NATIONAL BANK OF AUGUSTA *v.* AUGUSTA COTTON AND COMPRESS COMPANY.

1. The act of 1854 (Acts 1853–4, p. 56, Civil Code, § 3546), providing that cotton sold by planters and commission merchants on cash sale shall not be considered as the property of the buyer until fully paid for, although it may have been delivered to the buyer, applies to sales by commission merchants on their own account, as well as sales by them as representatives of the planter.
2. The above-recited act is a valid and constitutional law.
3. The act above referred to was not repealed by the act of 1887 (Acts of 1887, p. 36), amending section 2138 of the Code of 1882.
4. There is nothing in the act of Congress relating to national banks which relieves such banks from the operation of the act above referred to, in transactions had by such banks in this State.
5. The judgment rendered in this case was right and proper, and there was no error in refusing a new trial.

Argued January 22, — Decided June 7, 1898.

Complaint. Before Judge Eve. City court of Richmond county. July term, 1897.

E. H. Butt bought cotton, ten bales from Nixon & Danforth, three from Alexander & Alexander, and one from Hull & Tobin, factors and commission merchants, with the understanding that the purchases were for cash, in pursuance of a rule of the Augusta Cotton Exchange (of which Butt and these factors were members), and in pursuance of the custom of the trade in Augusta, that all sales of cotton are for cash and that bills therefor are payable as soon as weights and grades are determined upon; delivery sometimes being made before payment, to facilitate the removal and shipment of cotton, and as a convenience to the factors and buyers. Butt never actually paid for any of this cotton. He delivered it, with other cotton, on November 2, 1895, to the Augusta Cotton & Compress Co., a corporation chartered to buy and sell cotton and other merchandise, to carry on a general factorage business, etc., which delivered to him its receipt for the 14 bales in question, "to be compressed and delivered to his receipt only." This company did not then know that the cotton had not been paid for. It received the same and issued the receipt in the usual course of business and in accordance with the trade custom in Augusta. This partic-

ular cotton was delivered to the company to be compressed; but the company bought and sold cotton, and during the fall of 1895 had made a number of sales to Butt, issuing to him receipts of the same form and character as the one already mentioned. This receipt he indorsed and delivered, on the same day, to the National Bank of Augusta (organized and doing business under the national bank act of Congress), which thereupon advanced to him the full market value of the cotton, taking the receipt as its sole security, in due course of banking business. It had no knowledge of anything that had previously occurred, or of any claim against the cotton, and relied on the genuineness and validity of the receipt; knowing that it was the usual course of business and custom in Augusta to treat such receipts as transferable by delivery, and for the compress company to deliver the cotton called for by such receipt to the person presenting the same, when properly indorsed by the person in whose name it was issued. Two days later, Butt failed in business, and the three firms from whom he bought the cotton brought suits against the compress company to recover it. A week afterwards, the bank demanded of the compress company the 14 bales in question, and the company declined to deliver it. On December 27, 1895, the company filed its petition for interpleader, making all the persons before named parties defendant; admitting possession of the 14 bales, and asking that defendants be required to interplead, for injunction against their setting up their claims otherwise than under this petition, and for receiver to take charge of the cotton and sell it under direction of the court. A demurrer to this petition was overruled; but this judgment was reversed (99 *Ga.* 286), and upon the filing of the remittitur the case was dismissed. A petition was filed to reinstate the case; but the same was denied on January 30, 1897. Thereafter another demand was made by the bank upon the compress company for the 14 bales of cotton, and was refused. Judgments for money were then obtained against that company in the suits of the factors from whom Butt bought the cotton, upon verdicts found after the introduction of testimony; and these judgments were paid off by the company. No notice was given to the bank respecting the trial

of these cases, nor was it vouched in any way as interested in the suits; but it knew of their pendency, and made no request to be notified of the trials thereof. On February 6, 1897, the bank brought the present action against the compress company, counting for damages by its refusal to deliver the cotton and its alleged conversion of the same. The company's pleas to this suit were based on the facts already stated; and it alleged that it had never claimed title to the cotton or any interest therein, except for the usual charges for compressing, etc., and that it would have delivered the cotton on the presentation of the receipt, but for the suits previously brought by the factors who sold the cotton to Butt, these suits being upon the ground that Butt had not paid for the cotton, and that therefore no title to it passed to him under the law of Georgia. The bank demurred to these pleas, as setting up no defense to its action, and as being based upon a statute unconstitutional and void as to plaintiff, to wit the act of October 13, 1885, amending the Code of 1882, § 1593 (Civil Code, § 3546). The case was submitted to the judge without a jury. He overruled the demurrer, and rendered judgment for the defendant. The plaintiff excepted on the grounds appearing in the opinion.

*F. H. Miller*, *W. K. Miller* and *F. H. Miller Jr.*, for plaintiff.
*Fleming & Alexander* and *J. R. Lamar*, for defendant.

COBB, J. 1. In 1854 a law was passed by the General Assembly which declared that "cotton sold by planters and commission merchants on cash sale shall not be considered as the property of the buyer or the ownership given up until the same shall be fully paid for, although it may have been delivered into the possession of the buyer; any law, usage, or custom to the contrary notwithstanding." The title of the act from which this extract is taken was "an act for the protection in certain cases of planters and cotton sellers within the State of Georgia." Acts 1853–54, p. 56. In 1857 a similar law was passed in reference to rice sold by planters and commission merchants. Acts 1857, p. 15. These acts were embodied in the first three codes of the State. In 1885 the section of the then-existing code, which embraced the acts above referred to, was amended

by adding other commodities to the provisions of the section and inserting a proviso that in cases where the property which was the subject of the sale had been delivered into the possession of the buyer, the right of the seller to collect the purchase-money should not be affected by the loss or destruction of the property by fire or otherwise. Acts 1884–5, pp. 45, 52. The section of the present code relating to this subject is in the following words: "Cotton, corn, rice, crude turpentine, spirits turpentine, rosin, pitch, tar, or other products sold by planters and commission merchants on cash sale, shall not be considered as the property of the buyer until fully paid for, although it may have been delivered to the buyer: *provided*, that in cases where the whole or any part of the property has been delivered to the buyer, the right of the seller to collect the purchase-money shall not be affected by its subsequent loss or destruction." Civil Code, § 3546. It was contended in this case that the law above quoted was intended solely for the protection of the planter or producer of the articles mentioned in the law, and that the commission merchants referred to were only entitled to protection under this law when they were selling the articles specified for and on account of the planter, and not when they were selling them as their own property and on their own account. While this question has never before been directly raised and there is no decision of this court passing in terms upon the point, there are cases which have been decided, which, upon an examination of their facts, will be found to rule by necessary implication that commission merchants are entitled to protection on their own account.

The case of *Savannah Cotton-Press Association* v. *MacIntyre*, 92 *Ga.* 166, is the one more directly in point on this subject than any other. In that case MacIntyre was a cotton-factor and a commission merchant, and made a cash sale of thirteen bales of cotton to Green and delivered to him the cotton. On the day following the sale, demand for payment was made and payment was refused. In the meantime Green had delivered the cotton to the Cotton-Press Association, whose business was that of compressing cotton, and had procured its receipt for the property. With this receipt he obtained from the Ocean Steam-

ship Company a bill of lading of the cotton, drew a bill of exchange, and to secure its payment pledged the bill of lading and induced the bank to advance money on it. Five days after the cotton was delivered to the Cotton-Press Association, MacIntyre brought suit against it, and upon the trial of this case a verdict in his favor for the value of the cotton was rendered. Mr. Justice Lumpkin, in writing the opinion affirming the judgment of the court below in refusing a new trial, uses this language: "Indeed, no other verdict could have been properly rendered; and consequently, the court below committed no error in refusing a new trial." While it is true that it does not appear from the statement of facts in this case that the point was made that MacIntyre, the commission merchant, was not entitled to recover, because he was selling on his own account, and this question is not discussed at all in the opinion of the court, still it will be seen at once that the judgment in this case could not have been rendered as it was unless the court as it was then constituted were of the opinion that the law in question protected the commission merchant when selling on his own account. While the question was not discussed, it was directly involved in the case, and it seems to us that the decision is controlling upon the point. But even if this were not so, we think the acts above quoted and now embraced in the code were intended by the General Assembly, not only for the protection of the planter, but also for the protection of the commission merchant when selling for himself. The title of the act of 1854 named the persons intended to be protected as planters and cotton-sellers. The title of the act of 1857, which placed sales of rice upon the same footing as cotton, designated the persons to be protected as planters and rice-sellers. It is true that in all of the acts the persons to be protected are referred to as planters and commission merchants, but construing the expressions used in the acts in connection with those used in the titles, there can be no question that it was the intention of the General Assembly to protect a commission merchant in his sales as well as in sales made by him on account of his customer. It was further contended by the plaintiff in error, that the *MacIntyre* case was not controlling upon the pres-

ent case, because the bank which had received the compress receipt in that case was not a party to the suit in which the recovery was had.    It is true that the bank was not a party, the only parties being MacIntyre and the Cotton-Press Association; but an examination of the facts of the case will show that the Cotton-Press Association defended upon the bank's title, that is, their defense was that there was an outstanding paramount title in the bank, growing out of the compress receipt having been received by them in good faith without notice. This defense, under the decision, was held to be unavailable; and while of course the bank was not bound by the judgment, being no party, the same judgment would have been rendered if the bank had been a party.

2.  It is contended, however, that the act of 1854, as amended by the act of 1885, now embraced in section 3546 of the Civil Code, is unconstitutional for three reasons: first, "it is special legislation"; second, "the act retained title subject to the condition of the destruction of the property by fire, in which event the title was not retained"; third, "it impaired the obligation of the contract made by Butt & Co. with the bank under the deposit of the title of the cotton."    We do not think the original act of 1854, as amended by the act of 1885, is unconstitutional for any of the reasons assigned.    No section of the constitution of force at the time of the passage of the act of 1854 was called to our attention as being violated by this act. We have not been able to find one which would in any way affect the act in question.    It is true that the act applies only to certain classes; but all acts which are limited in their operation to certain classes of subjects are not necessarily unconstitutional.    Especially was this true at the time the act of 1854 was passed, when the constitution then in force contained no provision which either in terms or by necessary implication prohibited legislation of this character.    There may be good and sound reasons why certain classes should be made subject to different rules from those that govern people generally.    It was the judgment of the General Assembly of 1854 that planters and cotton-sellers were entitled to protection which was not given to persons engaged in the sale of other articles;

and there being nothing in the constitution prohibiting this character of legislation, the judgment of the General Assembly can not be controlled by the courts. See *Georgia Railroad Co.* v. *Oakes*, 52 *Ga.* 410. Whether such legislation would be valid under the present constitution is not now to be considered. The act of 1854 having been embodied in all of the codes of this State, and there being nothing in the present constitution which would repeal a law of this character, valid at the time of its adoption, it remains of force notwithstanding the power of the General Assembly to pass such a law at the present time may possibly have been taken away. The act of 1885, which declared that if the cotton or other product was delivered to the purchaser and was subsequently lost or destroyed while in his possession, the right of the seller to recover for the purchase-money would not be affected, does not seem to us to be violative of any constitutional provision, and our attention has not been called to any paragraphs of the constitution which were infringed. The original act being, as has been shown, constitutional, it would seem to be within the power of the General Assembly to modify that law to such an extent as that, under certain circumstances, the buyer would be governed by the general law in reference to sales. Such is the effect of the act of 1885, which makes the buyer bear the loss in a contract of sale when the property is destroyed in his possession. The act is intended for the protection of the seller of the cotton, and the amendment is in line with the purpose of the original act.

In reference to the third ground of attack upon this statute, it is only necessary to state that if the law in question was valid and binding at the time the contract between Butt and the bank was entered into, it became part and parcel of the undertaking between them, and can not be said in any way to impair the obligation of that contract. Laws impairing obligations of contracts, which are obnoxious to the constitution of the United States, are laws which attempt to interfere with contracts existing at the time of their passage.

3. It is further contended that the act of 1854 was repealed by the act of October 3, 1887 (Acts 1887, p. 36), amending section 2138 of the Code of 1882. The section of the Code of

1882 is as follows: "A pledge or pawn is property deposited with another as security for the payment of a debt. Delivery of the property is essential to this bailment, but promissory notes and evidences of debt may be delivered in pledge. The delivery of title-deeds creates no pledge." The act of 1887 simply amended this section by adding after the words "evidences of debt" the following words: "warehouse receipts, elevator receipts, bills of lading, and other commercial paper symbolic of property." The section as amended is now embraced in section 2956 of the Civil Code. We do not see such a conflict between the provisions of this section of the Civil Code and the act of 1854 and its amendments as to say that the act of 1854 was repealed by implication, it not being, of course, contended that there was any express repeal of the law. The only effect of the amended section was to declare what was essential to a complete pledge or pawn; and the effect it had upon the status of the warehouse receipts and other papers therein mentioned was to place the holder of the papers upon identically the same footing as if the property itself had been delivered in pledge or pawn. His rights would have been no greater with the warehouse receipt than if he had the article itself; and by the provision of the law contained in the amendment referred to, the warehouse receipt could be no more effective than the pledge or pawn of the property itself. In the case of *Raleigh Railroad Co.* v. *Lowe*, 101 *Ga.* 329, Mr. Justice Fish, in dealing with the subject of bills of lading, which, according to the law under consideration, are placed upon the same footing as warehouse receipts, uses this language: "They are not the representatives of money, are not used for transmission of money, nor for the payment of debts, nor for purchases. They are regarded as so much cotton, grain, iron, or other articles of merchandise, in that they are the symbols of ownership of the property mentioned in them, and a transfer of the symbol does not operate more than a transfer of what it represents."

4. It was further contended by the plaintiff in error, that the judgment of the court below was erroneous because the plaintiff in error, being a national bank, was protected by the provisions of the act of Congress relating to national banks from

the provisions of the statutes of this State which were followed by the court in its decision. That section of the national bank act which it is claimed is in conflict with the statute law of this State declares that a national bank has authority "to exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; and by obtaining, issuing and circulating notes according to the provisions of this Title." Revised Stat. U. S. (1875), § 5136, par. 7. We can see nothing in this section which would give to national banks any greater rights than to any other corporation or person engaged in the banking business in this State. It was certainly not the intention of Congress by the words quoted to place a national bank located and doing business within a State upon a different footing in regard to commercial transactions from other banks or persons engaged in the banking business. It is not contended, of course, that there is any language which expressly does this; and, as we have seen, there is no language in the section which can be held to bring about this result by implication.

5. The foregoing deals with all of the questions made by this record, which we think are of a character requiring treatment at length. Under the view we take of the case, the judgment rendered was the only proper one that could have been rendered in the case. The bank's contention that it was misled by the warehouse receipt can not be sustained. Any person who buys personal property other than negotiable instruments takes the risk of the title of his seller, and if it should happen that the article is cotton and a planter or commission merchant has sold it on cash sale and has not been paid, the buyer will not be protected in his title, no matter how innocent he may be, and notwithstanding he may have acted in perfect good faith in buying from the person who had no title to the property. Nothing appears in this record which could be considered as a waiver by the commission merchants who sold the cotton of their

right to insist upon the law which they invoke in their behalf, nor is there anything to authorize a finding that this law was not a part of the transaction because there was a custom of trade to the contrary prevailing in Augusta. It appears to us that the judgment was right, and that no reason has been shown for reversing it.

*Judgment affirmed.    All the Justices concurring.*