## CHARLESTON AND WESTERN CAROLINA RAILWAY COMPANY *et al. v.* POPE & FLEMING.

1. An intervenor takes the case as he finds it, and can not be heard to make objections to the pleadings or process which the defendant vouching him into court did not urge.
2. A cash sale of cotton delivered on Saturday is not converted into a credit sale because, on the Monday following, the commission merchant receives a check for the purchase-money, deposits the check in bank, draws against the account thus increased, and marks the bill "Paid."
3. If in such a cash sale the check is deposited in the drawee's bank, and dishonored on the day following, when presented through the clearing-house, the title of the commission merchant to the cotton, by the terms of the Civil Code, § 3546, is good as against the purchaser, the railroad to whom it is delivered, and the bona fide holder of the bill of lading.
4. The demurrer was properly overruled, and there was no error in finding, on the admitted facts, that the cotton sued for was the property of the plaintiff in the bail-trover suit.

Argued March 8, — Decided March 24, 1905.

Trover.    Before Judge Eve.    Richmond superior court.    December 29, 1904.

Pope & Fleming, commission merchants, brought bail-trover for 64 bales of cotton, of the value of $3,500, against the Charleston and Western Carolina Railway Company. The property was seized by the sheriff, and, the defendant company failing to do so, the plaintiffs availed themselves of the statutory privilege and took the cotton, giving a bond conditioned as required by the Civil

Code, §4606, in the event they failed to recover in the bail-trover action.    The case was submitted to the court upon the pleadings and an agreed statement of facts, from which it appeared that Pope & Fleming, on February 26, 1903, arranged for a sale of 116 bales of cotton to Mikell for cash.    Sixty-four bales of this cotton were hauled to the depot of the defendant company in Augusta, and the delivery was completed on Saturday, February 28, 1903. According to the custom in Augusta, where there was a delivery of cotton on Saturday, payment on Monday was treated as a cash sale.    When the cotton was delivered the railway company issued to Mikell bills of lading.    He transferred them to the National Bank of Augusta, received credit therefor on his account, and drew checks thereon; one in favor of Davison & Fargo, which was paid; another for $5,865.76, for the cotton sued for, to the order of Pope & Fleming.    This check was delivered on Monday morning, March 2d, and the account of sales of the cotton marked "Paid."    The check was deposited by Pope & Fleming with the Commercial Bank of Augusta, and their account credited with the face of the check.    Pope & Fleming drew checks against their account during Monday, but at the close of the banking hours there was to their credit in the Commercial Bank of Augusta $8,237.97.    In due course the check of Mikell against the National Bank of Augusta was presented through the clearing house on Tuesday morning, and payment refused.    The amount thereof was charged to Pope & Fleming on the books of the Commercial Bank.    At the close of business on Tuesday there was $5,363.79 to the credit of Pope & Fleming's account in the Commercial Bank.    Immediately on the refusal to pay the check Pope & Fleming brought bail-trover against the railway company, It defended by setting up the foregoing facts, claiming to have issued the bills of lading in good faith.    It vouched into court the National Bank of Augusta, holding the bills of lading.    It demurred on the ground, among others, that bail-trover would not lie against a corporation.    Both the defendants contended that the facts showed a credit sale ; that Pope & Fleming and Mikell were members of the Augusta Exchange, the rules of which treated the purchaser, under conditions like the foregoing, as a trustee for the seller..    The railway company and the bank both insisted that the account having been marked paid, and the check

having been deposited by Pope & Fleming in the Commercial Bank and drawn against, there was either an acceptance of the check itself as payment, or such a use of the proceeds of the check as entitled the railway company and the holder of the bill of lading to retain title to the cotton as against the claim of Pope & Fleming, under the Civil Code, § 3546.

The judge, to whom the case was submitted without the intervention of a jury, found, as a fact, that there was a cash sale; that the fact that the account of sales had been marked "paid" on the delivery of the check was not itself payment; that this account of sales thus marked had not been exhibited to the National Bank or the railway company; that it had not been relied upon by either, in issuing the bill of lading or in lending on the faith thereof. Both the railway company and the bank excepted to the judgment in favor of the plaintiff.

*W. K. Miller* and *F. H. Miller*, for plaintiff in error.
*E. H. Callaway*, contra.

LAMAR, J. (After stating the foregoing facts.) 1. Where the property is not found or bond is not given, the defendant in bail-trover may be committed to jail. Civil Code, § 4606. And since a corporation can not be arrested, the bail process might, to that extent, be ineffective where such company is sued as the sole tort-feasor. Compare *Hall* v. *Barnes*, 115 *Ga.* 945. That, however, would not prevent the suit from proceeding, nor would it prevent the company from surrendering the property and securing the benefit of the statutory bond. The bank was vouched into court that it might set up any defense it could offer, as well as for the purpose of estopping it from attacking the correctness of the judgment in the event the plaintiff recovered. As an intervenor it took the suit as it found it. And the process not being absolutely void, where the carrier, the original defendant, yielded possession of the cotton and a bond was given by the plaintiff for the eventual condemnation-money, the holder of a bill of lading, vouched into court, can not be heard to make objections as to defects or irregularities in the pleadings or process which the corporation itself did not urge. 17 Am. & Eng. Enc. L. (2d ed.) 185. Compare Civil Code, §§ 5234, 5000, 3617, 4776, 4845, 4903.

2. Where the cash is paid there is no occasion to rely upon

the Civil Code, § 3546. The section is applicable only where the agreement to pay cash is not complied with by the vendee. Cotton is bulky. After the terms of sale have been agreed upon, it is necessary that there should be sampling, grading, weighing, and marking before there can be delivery, and delivery itself requires time. Shall a check be given or the cash be paid before delivery, at the instant the last bale is delivered, or in the usual course of business? The statute answers this question. It clearly indicates that if the sale was to be for cash, the seller did not lose his title because he surrendered possession before he received the purchase-money. If the present case is not within the provision of the Civil Code, § 3546, there would be few, if any, transactions that would come within its terms. *National Bank* v. *Augusta Cotton Co.*, 104 *Ga.* 403 ; *Flannery* v. *Harley*, 117 *Ga.* 483.

3. In *Savannah Cotton Co.* v. *MacIntyre*, 92 *Ga.* 169, the court had before it a by-law like that in the present record, and in effect held that it did not operate to change a cash into a credit sale. Without attempting to pass upon the validity of such a regulation, it is only necessary to say that there is nothing in this record to show that the contract of sale was to be governed by the rules of the Exchange rather than by the laws of the State. Delivery on Saturday, check on Monday, and marking the bill " Paid" were entirely consistent with the idea of a cash sale. Checks are expected to be paid on presentation. Reliance on that expectation, the receipt of the check, depositing it for collection or credit, and drawing against the account thus created or augmented does not make the check payment unless it is itself actually paid. Civil Code, § 3720. The statute was intended to meet exactly this class of cases; and the court did not err in finding that the plaintiffs had title to the cotton, good as against the railroad company, and also as against the holder of its bill of lading. Marking the account of sales "Paid" was but in the nature of a receipt, which was capable of explanation. There is no claim that it was exhibited to the railway company or to the bank, or that they were misled thereby or acted thereon. The case, therefore, does not call for a decision as to what would have been the effect of an account of sales being thus marked, and reliance thereon by a third person. The demurrer to the petition

was properly overruled. Nothing in the Civil Code, §3359, operates to change the construction previously given to the Civil Code, § 3546. *Judgment affirmed. All the Justices concur.*