*Morris Macks,* for plaintiff in error. *G. W. Brooks,* contra.

2876. McCALL *v.* HUNTER, PEARCE & BATTEY.

1. The court erred in awarding a nonsuit. The decision is controlled by the ruling in *Flannery* v. *Harley,* 117 *Ga.* 483.
2. The term "on cash sale," as applicable to sales of cotton, corn, rice, and other products by planters and commission merchants under the provisions of the code (Civil Code of 1895, § 3546) is not confined to sales where the payment of actual money is to be made immediately, but includes all sales where it is expressly understood that the payment of actual money shall not be delayed for any longer period of time than is necessary, in the ordinary and usual course of business, to reduce negotiable paper to actual cash, and also includes such time as may be necessary, and may be agreed upon to be necessary, to enable the purchaser (when the seller wishes to afford that convenience) to make needed arrangements to procure the necessary cash. The fact that the seller may give a purchaser an opportunity of getting the cash and a limited period of time in which to procure it, where it is expressly understood that the seller is to receive the cash, does not defeat the rights of a planter or commission merchant, as conferred by that section of the code.
3. Where no time is specified for payment for an article purchased, the sale is presumably for a cash consideration; and where it appears that a planter or a commission merchant has sold any of the products mentioned in section 3546 of the Civil Code of 1895, this presumption will

prevail, in the absence of manifest proof that there was an agreement to the effect that payment was to be postponed as a part of the consideration, as an essential element of the contract of sale.

DECIDED JANUARY 24, 1911.

Trover; from city court of Savannah—Judge Freeman. July 6, 1910.

T. S. McCall brought trover against Hunter, Pearce & Battey for four bales of cotton which they had obtained from W. R. Purvis, to whom he had sold the cotton and who had failed to pay for it; the plaintiff contending that the sale was for cash, and that under the provisions of the code (Civil Code of 1895, § 3546), the title to the cotton had not passed from himself. He was nonsuited on the ground that he "had not sustained the burden of showing that the sale of the cotton in question was a cash sale." He excepted to this judgment.

As to the sale the plaintiff testified as follows: "On 25th January, 1908, on Saturday, . . I sold W. R. Purvis four bales of sea-island cotton," described, at agreed prices. "At the time of the sale the cotton was mine. I was a planter, and I raised the cotton. . . The terms were cash. . . I will state the full transaction: He offered me these prices I have just stated,—25, 23, and 13 for the four bales of cotton. I asked Mr. Purvis, 'How about the pay of the cotton?' He says, 'I could give you a sight draft this morning, but money matters are so hard, were I to do that it might be turned down and give us both trouble or delay in getting the money. I would prefer, if it suits you as well, to go to Savannah and get the money and come back and pay you for this cotton Wednesday.' Knowing that was as short a way as I could get the money, even if he would give me a sight draft and that honored, I said, 'That will be all right, Mr. Purvis.' That was on Saturday. He said he would leave for Savannah Monday morning and be back by Wednesday. He said, 'I have nothing to do but to go to Savannah and get the money, and as soon as I can get there and get the money to pay you, I will pay you the money.' That proposition was accepted by me and agreed to by Mr. Purvis; that was the agreement between us, and my cotton was delivered upon that agreement. After the cotton was all on the platform and weighed up and marked, ready for shipment,—in other words, had been delivered and ready for shipment,—Mr. Purvis suggested to me, 'I might not be able to get back by Wednesday, may be we

had better say Thursday; that would give me more time; something might turn up that I might not be able to return by Wednesday;' and some one in the crowd, I don't remember who, suggested, 'if that is the case, perhaps you had better give us a due bill showing the amount of the transaction;' and he gave me a due bill. That is the due bill that he gave me on Saturday morning, the 25th of January, which reads as follows: 'Due T. S. McCall on four bales s. i. cotton $284.70. [Signed] W. R. Purvis.' It is dated 25th January, 1908, the very day of the sale." J. A. Rogers, who was one of several selling cotton to Purvis at the time and place of this sale, testified: "We did not know absolutely when we would get pay for it until the sale was closed up. There was some time in it." "I don't know anything about the transaction between Purvis and McCall."

·W. T. Burkhalter, Twiggs & Gazan, for plaintiff.

P. W. Meldrim, Wilson & Rogers, for defendants.

RUSSELL, J. The only question in this case is whether the evidence in behalf of the plaintiff authorizes the inference that the cotton sold by· him was sold for cash, or whether the transaction was one involving the features of a sale upon credit. At first glance we were inclined to the opinion that the court below had ruled properly in awarding a nonsuit, because of the evidence in the record that the plaintiff had accepted a due bill for the amount of the purchaser's indebtedness to him. However, upon a review of the testimony as a whole, and especially in view of the rulings in *Flannery* v. *Harley,* 117 *Ga.* 483 (43 S. E. 765), *National Bank* v. *Augusta Cotton Co.,* 104 *Ga.* 403 (30 S. E. 888), and *Charleston Ry. Co.* v. *Pope,* 122 *Ga.* 579 (50 S. E. 374), we are constrained to hold that the trial judge erred at least in not submitting to the jury the question as to whether the sale was for cash or on time. Indeed, the Supreme Court has decided adversely to the contentions of the learned counsel for defendants on every proposition advanced in their brief.

There is such a similarity between the facts of the case at bar and those of the *Harley* case as really to leave little room for discussion of any of the points here involved. As was said by Justice Lamar in *Charleston Ry. Co.* v. *Pope,* supra, "Where the cash is paid there is no occasion to rely upon the Civil Code, § 3546. The section is applicable only where the agreement to pay cash is not

complied with by the vendee. Cotton is bulky. After the terms of sale have been agreed upon, it is necessary that there should be sampling, grading, weighing, and marking before there can be delivery, and delivery itself requires time. Shall a check be given or the cash be paid before delivery, at the instant the last bale is delivered, or in the usual course of business? The statute answers this question. It indicates that if the sale was to be for cash, the seller did not lose his title because he surrendered possession before he received the purchase-money." If the transaction involved in the case before us does not come within the purview of the code section cited above (Civil Code of 1895, § 3546), it would seem that it would be hard to imagine a case in which that provision of our law would be applicable. The plaintiff in the present case testified that he sold the cotton on a cash sale. It is true that he was told he would not get the money upon the instant, and it seems to have been understood that payment would be made by a draft (whether upon a bank or upon some firm or individual the record does not disclose), and the conclusion of the agreement was that instead of accepting a sight draft (which would not have been payment until the draft itself was paid), the seller merely agreed to make the purchaser his agent to go to Savannah and bring back the money. It can not be questioned that the character of the negotiation at the outset was a sale for cash. The only question is whether any subsequent stipulation or condition changed the character of the sale from a cash sale to one in which there entered as a part of the transaction the element of time. It is true that one witness for the plaintiff testified that there was some time in it,—the time which Mr. Purvis, the purchaser of the cotton, said would be necessary to enable him to go to Savannah and return with the money. Personally we might be in some doubt as to this feature of the case, but in view of the ruling in *Flannery* v. *Harley,* supra, the question is easily solved. The identical question was presented in that case, and the Supreme Court held the sale to be for cash, although, under the express terms of the contract, payment of the cash was not to be made until several days after the delivery of the cotton. From the various rulings of the Supreme Court upon this question, and especially when we consider the rationale of the rule as expounded by Justice Lamar in *Charleston Ry. Co.* v. *Pope,* supra, it is plain

that a sale for cash is not restricted to those transactions in which the cash is to be paid upon the instant, or upon delivery of the cotton, but the term "sale for cash" includes all of those transactions in which the seller of the cotton parts with its possession upon the mutual agreement that the transaction is for a cash consideration, which is to be paid, not at a fixed and definite date agreed upon as one of the conditions precedent to the contract, but as soon as the purchaser may have been enabled, by such means as the seller will permit him to do so, to take the necessary steps to produce the currency exactly requisite to close the transaction and complete the purchase. Until this is done, our statute declares that the title to the cotton remains in the seller, and is not subject to be divested even by an innocent purchaser.

Counsel for the defendants strongly rely upon the testimony of J. A. Rogers, a witness for the plaintiff, that "we did not know absolutely when we would get pay for it until the sale was closed up. There was some time in it." "I called, on the following Friday, to get my money from Mr. Purvis at Reidsville. . . I went there because Purvis told me he would be back on Thursday, and if he did not get back then, he would be back a day or two later; . . and if he did not, he would give us notice,—write us, or inform us through the mail just when to be there;" also the testimony of the plaintiff himself, to the effect that Purvis told him that he might not be able to get back by Wednesday,—"maybe we had better say Thursday; that would give me more time; something might turn up that I might not be able to return by Wednesday." As we have said above, however, no matter what might be the inclination of our minds in classifying a transaction of this kind, there can be no question that the transaction in *Flannery* v. *Harley*, supra, was no more of a cash transaction than the one before us, especially in view of the fact that the plaintiff testified that he had never sold any cotton except for cash, and had never contemplated selling any otherwise than for cash. The bona fides of this statement, and whether it was tinctured by a self-interest arising subsequently to Purvis' insolvency, was a question for solution by the jury. It is immaterial that Purvis said that he would bring the money back with him from Savannah, and that he was uncertain what day he would return. The very fact that no definite day in the future was fixed for the payment, other than the very first

day that Purvis could get back, indicates that the transaction was understood to be for cash. The plaintiff, instead of accepting the sight draft, sent Purvis, as a substitute human draft at sight, to go immediately to Savannah, get the money, and return as promptly as possible and deliver the same to Mr. McCall. A sight draft which must be forwarded for collection introduces an element of time into the transaction, and yet does not transform a sale for cash into a sale upon credit or on time; and there may be instances in which an agent might personally be sent to bring money, who would return with it more expeditiously than the currency could be conveyed by the medium of a sight draft. It has been ruled that the acceptance of a draft which was not paid did not change the character of the transaction from a cash sale to one upon time, and that the acceptance of a draft, where it was not paid, did not preclude the seller from availing himself of the provisions of section 3546, supra. As the testimony of the plaintiff, construed most strongly against him, only shows that McCall used Purvis as at once the draft, the bank, and the medium for transmitting the draft, we do not see that this fact alters the rule or tends to change the character of the transaction from a sale for cash. It appears that the draft was the first means of payment mentioned, and that the plaintiff, as seller of the cotton, agreed to substitute Purvis for a draft merely because it was suggested that he could go to Savannah and get the money more certainly and more expeditiously than it could be secured by draft.

The additional point which is raised by counsel for the defendants, that if either McCall or they must suffer, McCall should be the one to suffer, because his conduct put it in the power of Purvis to inflict loss upon one or the other, is fully disposed of by Judge Simmons in *Flannery* v. *Harley,* supra, and it is held that the general principle referred to has no application when it comes in conflict with the provisions of the code designed for the protection of planters and commission merchants.     *Judgment reversed.*