### 8522.  EXCHANGE BANK v. HORNE-ANDREWS COMMISSION CO.

It was shown by undisputed evidence that the plaintiff was a commission merchant, and that the plaintiff's sale of the cotton in question was a cash sale; and, under the provisions of the code as to cash sales of

cotton by commission merchants (Civil Code of 1910, § 4126), payment of the buyer's checks for the cotton being refused and the plaintiff not being paid for it, title to the cotton had not passed from the plaintiff when the defendant bank received the bill of lading for it, with the buyer's draft on a subsequent purchaser for the purchase price, which the bank collected and applied to pre-existing indebtedness of the original buyer to itself. The court did not err in directing a verdict for the plaintiff.

                            DECIDED JUNE 18, 1917.

Action for damages; from Baldwin superior court—Judge Henry C. Hammond presiding. January 9, 1917.

*Hines & Vinson,* for plaintiff in error.

*Allen & Pottle,* contra.

GEORGE, J. The Horne-Andrews Commission Company filed suit against the Exchange Bank, and alleged: that the plaintiff, while engaged in the warehouse business and in the business of buying and selling cotton for its customers, as commission merchant, sold to J. J. Barrett, under the trade name of Barrett Cotton Company, on December 5, 1913, six bales of cotton for $336.56; on December 6, ten bales for $619.31; and on December 8, three bales for $183.92; that the cotton was delivered to Barrett, who in turn gave to it three checks, dated December 5, December 6, and December 8, covering these respective sales, each check indicating on its face the number of bales of cotton for which it was given; that after giving the checks Barrett sold and delivered the nineteen bales of cotton to one Ellison, who in turn delivered them to the Georgia Railroad and received from the railroad a bill of lading covering this cotton and other cotton and naming the Barrett Cotton Company (the trade name of J. J. Barrett) as consignee, at Augusta, Georgia, "order notify Weil Bros.;" that the bill of lading was attached to a draft, drawn by Ellison, for $2,867.65, on Weil Bros., Augusta, Georgia, payable to the order of O. M. Conn, cashier of the defendant bank; that the bank indorsed this draft, and applied its proceeds, including the proceeds of the nineteen bales of cotton bought by Barrett from the plaintiff, to the payment in part of an already existing overdraft due the bank by Barrett, and declined to pay the three checks referred to; that the checks were promptly presented to the bank on the dates given, and were again presented to the bank, and the bank declined to pay them. The suit was for the full value of the cotton as represented by the checks, and for punitive damages and counsel fees, on the added

allegation of bad faith on the part of the bank in refusing to pay the checks. The defendant in its answer admitted that it collected the draft described and applied the proceeds of the draft, including the proceeds of the nineteen bales of cotton referred to in the petition, to Barrett's overdraft with it.

On the first trial of the case a verdict in favor of the plaintiff for the value of the cotton was returned by direction of the court, and the jury found for the defendant bank on the prayer for punitive damages and attorney's fees. The case was reviewed by the Supreme Court on exceptions to the overruling of a demurrer, and to the refusal of a new trial (145 *Ga.* 870, 90 S. E. 55), and that court held that the action was not on contract, but in tort. The 4th division of the decision of the Supreme Court is as follows: "Upon the question whether the plaintiff was a commission merchant as contemplated by the statute, the evidence was equivocal. On other material issues the evidence was conflicting. It was therefore erroneous to direct a verdict for the plaintiff." The decision of the Supreme Court is silent as to the other material issues upon which the evidence was conflicting. On the second trial the court again directed a verdict for the plaintiff, for the value of the cotton, as evidenced by the checks described in the petition, and referred the question of punitive damages and attorney's fees to the jury. The jury again found for the defendant upon that issue. The case is here on direct bill of exceptions.

Andrews, sworn for the plaintiff, testified: that he was secretary and treasurer of the plaintiff company; that the plaintiff is a commission merchant, selling cotton for farmers and charging a commission for selling it; that the plaintiff operates under a charter authorizing it to carry on the business of a commission merchant, and that on the dates named in the petition the plaintiff sold for its customers the cotton described in the petition, and for the amounts stated; that the checks referred to in the petition represented the actual market value of the cotton, and that they were presented to the defendant bank, and payment was refused; that for the six bales of cotton sold to Barrett on the 3d of December it received a check on the 5th; that for the ten bales sold Barrett on the 4th it received a check on the 6th; and that for the three bales sold on the 5th it received a check on the 8th. This was in conformity with a custom between the warehouse and the buyer to

allow two days from the purchase of the cotton to mark it, get it from the warehouse, and obtain a bill of lading covering the cotton. The testimony of this witness was not disputed.

Under the ruling in *National Bank of Augusta* v. *Augusta Cotton &c. Co.,* 104 *Ga.* 403 (30 S. E. 888), this evidence demanded a finding that the plaintiff was a commission merchant. Indeed, the plaintiff seems to have sold the cotton directly for its farmer customers. On the authority of *McCall* v. *Hunter,* 8 *Ga. App.* 612 (2) (70 S. E. 59), and the cases there cited, the cotton was sold for cash, or delivered on cash sale. Compare especially *Charleston &c. Ry. Co.* v. *Pope,* 122 *Ga.* 577 (50 S. E. 374). Admittedly the checks were never paid, either by the defendant bank or by Barrett. The plaintiff accounted to its customers for the value of the cotton. The title to the cotton did not pass out of the plaintiff. The defendant bank received the bill of lading indorsed by Barrett, and in legal effect applied the plaintiff's cotton to the payment of Barrett's already existing overdraft. It was not even an innocent purchaser; had it been, that fact would have made no difference. See *Flannery* v. *Harley,* 117 *Ga.* 483 (43 S. E. 765). Whether the defendant bank knew, when it accepted the draft to which the bill of lading was attached, that the bill of lading covered the specific lot of cotton in question is in doubt under the evidence in the record. Fairly interpreted, the evidence clearly shows that the bank knew at or before the collection of the draft that the plaintiff's cotton was included in the bill of lading attached to the draft. It certainly had knowledge of that fact before it made any application of the proceeds of the draft. Indeed, it finally applied the proceeds of the cotton to the payment of an already existing overdraft due to it by Barrett, or the Barrett Cotton Company. If any effect is to be given to section 4126 of the Civil Code (1910), which provides that cotton or other products sold by planters or commission merchants on cash sale shall not be considered the property of the buyer until fully paid for, although delivered to the buyer, it must be given effect in a case of this character. The defendant received and applied the plaintiff's cotton, sold by the plaintiff for cash and for which it had not received payment, to the existing indebtedness of the purchaser. We have carefully examined the facts in the record, because we have been much in doubt as to the true meaning of the decision of the

Supreme Court in the case. While there was, in the record before the Supreme Court and in the record before this court, a conflict in the evidence as to whether the defendant bank knew at the time it received the draft and bill of lading that they covered the cotton sold by the plaintiff, we can not think that this question was material or controlling. This conclusion is compelled by the plain terms of section 4126, supra, and by the decisions of the Supreme Court. The opinion in *National Bank of Augusta* v. *Augusta Cotton &c. Co.,* supra, in our opinion, forecloses the question against the bank. Compare also *Postell* v. *Avery,* 12 *Ga. App.* 507 (77 S. E. 666). The undisputed facts in this case lead to but one conclusion, and the court was right in directing a verdict for the plaintiff.

*Judgment affirmed. Wade, C. J., and Luke, J., concur.*