ALCO FEED MILLS *v.* HOLLIS.

*Bryan, Middlebrooks & Carter, Bonneau Ansley,* for plaintiff in error.

*James W. Arnold,* contra.

Hutcheson, Justice.   L. L. Hollis, a farmer of Oconee County, brought suit against Alco Feed Mills, alleging that in 1936 he sold to Victor Martin and his brother twenty thousand pounds of wheat for a cash consideration; that the Martins, without obtaining title and without paying for the wheat, sold it to Alco Feed Mills; that title to the wheat remained in Hollis; that the defendant was in possession of the wheat and refused to deliver it to petitioner or to pay him the profits thereof; and that the value of the wheat is $400, for which he prayed judgment.   The defendant answered, denying the allegations of the petition, and averring that "section 96-110 of the Code of Georgia of 1933—being section 4126 of the Civil Code of Georgia of 1910—is invalid and void and contrary to the constitution of the United States and the constitution of Georgia, for the following reasons:   1.   The said Code section is special legislation discriminating in favor of a class of persons known as planters and giving to them a special and peculiar right whether the products of the soil sold by them were produced by them or not.   In this case defendant shows that of the 333 bushels of wheat which plaintiff alleges he sold to Mr. Martin, who in turn sold it to defendant, Alco Feed Mills, only 135 bushels were produced by the plaintiff, the said Hollis, as a planter, that is to say, he sowed and reaped only 135 bushels of wheat.   2.   That said statute is class legislation and discriminatory in so far as it has been held to apply to all sales made by planters, whether of products produced by them from sowing and planting—either by their own efforts or through their croppers, tenants, and hired hands—and also to all farm products otherwise acquired by them and resold.   3.   The said section denies to all persons—including this defendant—the equal protection of the laws, and is therefore in violation of the provisions of the constitution of the United States and of the constitution of Georgia rendering such laws invalid."   The judge, to whom the case was

submitted without a jury, rendered judgment in favor of the plaintiff for $320. He held that in view of the rulings by the Supreme Court section 96-110 of the Code of 1933 is not unconstitutional. A motion for new trial was overruled, and the defendant excepted.

■ In the motion for a new trial it is contended that under the uncontroverted evidence the plaintiff was not entitled to re-. cover, because it appeared that the transaction was not a cash sale, but was a credit sale evidenced by a due-bill for the sale of the wheat, as follows: "Due L. L. Hollis 20,000 wheat $300.00. Victor Martin." And by a letter of L. L. Hollis in evidence, dated "Bogart, Georgia, July 3, 1936," reading as follows: "Dear Mr. Martin: I will thank you if you will send my check for my feed by Mr. C. E. Hodges, and I will send the due-bill by return mail. I am in need of it." This suit was brought under the Code, § 96-110, which reads as follows: "Cotton, corn, rice, crude turpentine, . . or other products sold by planters and commission merchants, on cash sale, shall not be considered as the property of the buyer until fully paid for, although it may have been delivered to the buyer: Provided that in cases where the whole or any part of the property has been delivered to the buyer, the right of the seller to collect the purchase-money shall not be affected by its subsequent loss or destruction." The above writing was explained by witnesses in the case, and their testimony is set out in grounds 12, 13, and 14 of the motion for new trial. Error is assigned on the admission of the testimony, on the ground that it was hearsay, irrelevant, and that the defendant was not bound thereby. The evidence is here set out, and those grounds are treated together with the first ground of the motion. The evidence was admissible as throwing light on the transaction and showing that the transaction was a cash sale and not a credit sale. L. L. Hollis, the plaintiff testified: "As to why I was not paid for the wheat at the time of its delivery, Raymond Martin and Victor Martin said there would be two loads of wheat, and asked me did I want a check for each load or bring a check when they got the last load of wheat, and I told him, 'When you get the wheat, I want my money.' There was nothing mentioned until they got ready to go; then Victor said, 'I never come by the office this morning to get your check; if you will get on the truck and

go to Atlanta with me, you will get your money when you get to the office,' and he said, 'If you don't want to go, I will mail you a money order as soon as I get to the office this afternoon.' At the time Victor Martin and Raymond Martin purchased the wheat, they said they were representing Fain Grain Company; that is exactly how they purchased it. When Victor Martin said he did not come by the office that morning, he did not mention what office. This due-bill was written after the wheat was loaded and the tarpaulin was put on the load of wheat and they were ready to go, and he asked me and my brother and Hodges did any of us have a piece of paper to write me a receipt showing that he got my grain, and we did not have a pencil or paper, and he says, 'Well, I will write you a receipt showing that I got your grain, and I will send you a money order back this afternoon, and you will get it to-morrow on to-morrow's mail, as soon as I get to the office. One week from that day I come to Atlanta, on next Monday, and came to the Fain Grain Company, and he and one of the men was talking. I found Raymond Martin at the Fain Grain Company, and I went by where they were sitting and said, 'Raymond, I want to speak to you when you finish your conversation.' And when he finished his conversation he came to where I was, and I said, 'Raymond, Victor told me he would send me a money order last Monday afternoon when he got to the office, and I have not received it, and I want my money for my wheat,' and he told me that on Monday, one week from the day he purchased my wheat, that Victor was down below me that day, and if he didn't go by there he would come by there on Tuesday and bring my check; he told me Victor had my check with him and was down in my section with my check. Raymond Martin said he sold and bought for Fain Grain Company, and Victor Martin ran the truck. I sold the wheat to Victor and Raymond Martin representing Fain Grain Company; that is what they told me; that was on June 22d, in Bogart, in Oconee County. I got no answer to this letter that I wrote. I saw Martin at various times afterwards and talked to him about it, and asked him to pay me for my wheat. I showed him this due-bill and said, 'I want you to pay it and take it up.' Raymond Martin brought the sacks for the wheat with him the day before, when he bought the wheat; there were cotton-meal sacks, Fain Grain Company sacks, scratch-

feed and various kinds. He said, 'I am buying grain for the Fain Grain Company'."

In addition to the above testimony (which is set out in ground 12 of the motion for new trial), Hollis testified: "I sold them what wheat I had. I didn't know just how many bushels that was. I got for it 90 cents a bushel. That was an absolute cash trade; they were to pay me when the truck came; they did not have the truck that day; the truck came next day. . . He asked me and my brother and Hodges did any of us have a piece of paper to write me a receipt to show that he got my grain, and we did not have a pencil or paper, and he says, 'Well, I will write you a receipt showing that I got your grain, and I will send you a money order back this afternoon, and you will get it to-morrow on to-morrow's mail, as soon as I get to the office.' As to whether he wrote this [indicating]—he wrote something and give it to me; it was in a book form, and when he handed it to me I just folded it up and put it in my pocket. I did not read it until they were in Atlanta, I suppose."

Ground 13 of the motion contains the following testimony of Mell Higginbotham; "We asked the price, and Laurence told him what he would take for the wheat, that he was needing money and would sell the wheat. Raymond told him he would take the wheat and he would send a signed check with the truck the next morning to get the wheat; he told us he was representing Fain Grain Company. I did not know the Martins but a short time before this; he said he was representing the Fain Grain Company and he was buying wheat and also selling feed. He come down to my brother-in-law's, and asked me did I know of anybody who run a thrasher around there, and I told him I knew several; and he wanted to buy the wheat and asked me to go with him and show him where Laurence lived." In ground 14 appears the following testimony of Herschel Hollis, which was objected to on the same ground as that set out above: "When he started to write it, he asked if anybody had any paper, and nobody didn't have any in his pocket, and he felt around until he found some in his pocket, and he wrote it. My brother just taken it and put it in his pocket. When Martin asked for a piece of paper, he says, 'Anybody got a piece of paper?' I will write you a receipt for this wheat. I didn't come by the office and get a

check.' He told Laurence, 'I was expecting two loads, but there is not but one. I didn't come by to get your check. I was expecting to bring it on the second load. I will give you a receipt, and as soon as I get back to the office I will mail you a money order—put it in the mail to-night.' I made a trip to Atlanta with my brother. He got this wheat on Monday, and I made a trip up here with him the next Monday. I saw Raymond Martin on that trip. We walked in the Fain Grain Company, and he was there. He told him, 'Raymond, I have come up here to see about my check. Victor said he would mail me one back last Monday evening, and I didn't get it,' and he said, 'Victor is down your way or in below you to-day; he has got it with him; and if he hasn't been there when you get home, it will be there to-morrow; he may have went on and come back by there with it.'"

This evidence, objected to as hearsay and irrelevant and not binding on the defendant, tended to explain the transaction, and was sufficient to authorize a finding that the sale was a cash transaction. These grounds of the motion for new trial are without merit.

In *Flannery* v. *Harley,* 117 *Ga.* 483 (43 S. E. 765), a case brought under the same section of the Code as the instant case, but involving a sale of cotton, this court held that, "Under the law of this State, where there is a delivery of cotton by a planter or commission merchant 'on cash sale,' the title of the seller remains undivested until payment in full of the purchase-price, and may be asserted by him even as against a bona fide purchaser from his vendee. . . In the absence of an express understanding to the contrary, the giving of a draft in settlement of a cash demand does not operate as a payment thereof, until the draft is itself paid." In the opinion Chief Justice Simmons said: "If the sale was on credit, the provisions of that act were not to apply. If, on the other hand, there was actually a 'cash sale,' title to the property which was the subject-matter thereof should not be deemed to pass into the buyer, notwithstanding the possession of the property might be yielded to him by the seller, until the latter was paid in full the purchase-price agreed on; but, on the contrary, the contract of sale should be regarded as executory, both with respect to the delivery of and the payment for the cotton covered by the contract until the buyer should have fully per-

formed his express stipulation to pay in cash the purchase-price agreed on between the parties; and that, to this extent, there should be an abrogation of the general rule of law regarding the sale of personalty under which actual or constructive delivery of the article sold is to be considered a performance on the part of the seller of an executory contract of sale, and has the legal effect of immediately passing title to the property into the purchaser, irrespective of whether he has or has not performed his obligation to pay for the same." See to the same effect: *Graham* v. *John Flannery Co*, 32 *Ga. App.* 713 (124 S. E. 729).

■ Grounds 5 and 6 of the motion for new trial assigns error because, as alleged, the undisputed evidence shows that of the 333-1/3 bushels of wheat sold only 135 bushels thereof was raised by Hollis, the plaintiff, the balance of the amount of wheat being toll received from threshing the wheat of others, and that Hollis was not entitled to the benefit of section 96-110, upon which the suit is based, because this section applies (a) only to cash sales, and (b) only to products sold by planters and commission merchants on cash sales, and that Hollis was neither a planter nor a commission merchant as to the wheat in excess of what he had raised on his farm. In *Butler* v. *Ga. & Ala. Ry.*, 119 *Ga.* 959 (47 S. E. 320), this court held: "A planter may avail himself of the protection of the section above cited, in any cash sale of cotton which may be made by him, without reference to whether it was produced by him or acquired from another." A part of the wheat sold was produced by the plaintiff, while a part was toll wheat from threshing; and from the decision cited it appears that the section of the Code relied on is applicable to both parcels of wheat.

■ Grounds 8, 9, and 10 state that if the Code section in question is construed as applying to the sale of toll wheat by a thrasher, it is special legislation discriminating in favor of a class of persons known as thrashers, because it gives to them a special and peculiar right as fixed by said statute, not given to or possessed by others; and that if given this construction as applying to a case like the present, the Code section would be unconstitutional and void, because contrary to art. 1, sec. 1, par. 3, of the constitution of Georgia, which provides that no person shall be deprived of life, liberty, or property, except by due process of law;

and that said statute would also be contrary to the fourteenth amendment to the constitution of the United States, which provides that "No State shall . . deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Ground 11 states that the section of the Code is class legislation, and for this reason is contrary to the fourteenth amendment of the constitution of the United States. *Hardeman* v. *Reynolds,* 149 *Ga.* 660 (101 S. E. 804), was a case where this same section of the Code was under attack on the same constitutional grounds as in the instant case; and in the decision concurred in by all the Justices this court held: "The statute embraced in section 4126 [now 96-110] of the Civil Code, providing that title to cotton, corn, and certain other specified products sold by planters and commission merchants on cash sale does not pass until the articles sold are paid for, is not unconstitutional on the ground that it is special legislation, or that it denies the equal protection of the laws, in violation of the provisions of the Federal and State constitutions." In the opinion by Mr. Presiding Justice Beck it was said: "The alleged invalidity of this statute was under consideration in the case of *National Bank of Augusta* v. *Augusta Cotton & Compress Co.,* 104 *Ga.* 403 (30 S. E. 888), and there it was decided adversely to the plaintiffs in error who are raising the same question. Leave is asked to review the decision just referred to, and we are requested to reverse the ruling there made. That decision was rendered by a full bench of six Justices, and the majority of the court as now constituted are of the opinion that the ruling there made should stand." There is a request here to review and reverse these decisions, which is denied. See *Flannery* v. *Harley,* and *Graham* v. *Flannery,* supra; *Anchor Duck Mills* v. *Harp,* 40 *Ga. App.* 563 (150 S. E. 572). Under the pleadings and the evidence the judge, who heard and passed on the case without the intervention of a jury, was fully authorized to find in favor of the plaintiff, and he did not err in refusing a new trial.        *Judgment affirmed. All the Justices concur.*