### 3190.　WHITAKER v. THE STATE.

1. The courts judicially know that cotton is a farm product, and is therefore included within those "products" mentioned in the Penal Code (1910), § 553, payment for which by means of a worthless check is punishable by law. The description of the check alleged to have been given in payment for the cotton in question was sufficiently full. For these reasons there was no error in overruling the demurrer to the indictment.

2. The defendant having filed a plea of autrefois acquit, in which he alleged that he had been acquitted upon an indictment charging him with the offense of felony and setting out the same essential facts as those alleged in the pending indictment, and it appearing from the plea of former jeopardy, which was not traversed, that the transaction referred to in each indictment was the same, it was error to sustain a demurrer to the plea of former jeopardy, to the effect that the plea alleged a different offense from that charged in the indictment upon which the defendant was about to be arraigned, and that the matters alleged in said plea constitute no defense.

DECIDED APRIL 11, 1911.

Indictment for misdemeanor; from Cobb superior court—Judge Morris. January 17, 1911.

*Malvern Hill, Gober & Griffin,* for plaintiff in error.

*J. P. Brooke, solicitor-general, D. W. Blair, J. Z. Foster,* contra.

RUSSELL, J. The defendant was convicted of a violation of section 553 of the Penal Code of 1910. It is alleged in the indictment that "after having bought from N. O. Gunnin two certain bales of cotton for the sum of $111.76, the said N. O. Gunnin being then and there a planter and having said cotton for sale, [the defendant] did give a check on the Bank of Kennesaw, of said county, for said cotton, the payment of which check was refused by said Bank of Kennesaw, whereby the said N. O. Gunnin sustained a loss in the sum of $111.76, contrary to the laws," etc. The defendant excepts to the judgment overruling the motion for new trial, and also to the judgment of the court in overruling a demurrer to the indictment, and in sustaining a demurrer to a plea of former jeopardy filed by the defendant. We omit any consideration of the exception based upon the judgment overruling the motion for new trial, and shall consider only the rulings upon the demurrer and the plea of former jeopardy, for the reason that in our opinion the case should have been terminated by a different ruling upon the plea of former jeopardy.

1. We think the court properly overruled the demurrer to the indictment. In one of the grounds of the demurrer it is insisted

that the indictment does not allege that the check was given in payment for a farm product, the indictment alleging that the check was given in payment for two bales of cotton, and the defendant insisting, as a matter of law, that cotton is not a product similar to fruits, melons, vegetables, butter, eggs, and poultry, so as to bring it within the provisions of section 552 of the Penal Code of 1910.   The courts judicially know that cotton is a farm product.   Whether it is to our interest to maintain the supremacy of its royalty upon the farm is a debatable question; but as to the truth of the proposition that "cotton is king," upon the Southern farm at least, there can be no dispute.   We can not concur in the insistence that the language of section 552 is not broad enough to include cotton as one of the products designated therein.   The language of this section is as follows: "Any person who shall solicit or in any way procure consignments of fruits, melons, vegetables, butter, eggs, poultry, or other farm, orchard, and dairy products in this State, whether for themselves or as agents or employees of others, to irresponsible persons, firms, or corporations, to be sold on commission, and who shall fail to account for and pay to the rightful owner the whole net proceeds arising from the sale of such products so consigned within thirty days, said person soliciting or otherwise obtaining such consignments shall be guilty of a misdemeanor."   Section 553, under which the accused was indicted, is as follows: "If any person shall buy any of the products mentioned in the preceding section, either for himself or others, and give a draft, check, or order in payment of such products, and the payment of the draft, check, or order is refused by the drawee, by which the seller sustains loss, such buyer shall be guilty of misdemeanor."

It will be noted that after specifying fruits, vegetables, butter, eggs, and poultry, section 552, supra, continues: "Or other farm . . products in this State."   Section 553 penalizes the giving of a worthless check in buying "any of the products mentioned in the preceding section."   The "other farm, orchard, and dairy products" mentioned in section 552 need not be similar products to those which the section designates by name otherwise than in their origin.   All the articles mentioned by name may be products of the farm.   They are ordinarily farm products, and therefore it is manifest that it was the intention of the legislature, without

proceeding with a further enumeration of all the products that might be produced upon a farm, to use a general term which would include anything that could be produced on a farm or at an orchard or a dairy. To except cotton from the operation of section 552 would operate likewise to except corn, wheat, oats, hay, and numerous other staple articles which bear no more similarity to fruits, melons, butter, eggs, and poultry than does cotton. It is clear that in the use of the term "other farm products," in section 552, the General Assembly intended to use a term so sweeping in scope as to include any crops ordinarily raised upon a farm in this State, and section 553 includes buyers of "any of the products mentioned" in section 552.

Another ground of demurrer insisted on was that no description of the check was set out in the indictment, and no allegation as to when, how, or by whom said check was presented, or when or for what reason payment was refused. We think the description of the check was ample. The indictment states that it was given by Whitaker, was payable to Gunnin, was drawn upon the Bank of Kennesaw, and was for $111.76

2. The defendant, in his plea of autrefois acquit, set out the indictment upon which he had been acquitted, and in which it was alleged that the defendant, "being engaged in the business of buying cotton on cash sales, [did] buy for cash from N. O. Gunnin, who was then and there a planter, and as such had cotton for sale, two certain bales of cotton for the sum of $111.76, and did then and there refuse to pay for said cotton, and did then and there make way with and dispose of the same, without paying therefor, contrary," etc. There was no traverse to the plea of former jeopardy. It was not denied that the indictment was correctly set forth. It was admitted by demurrer that it was upon this indictment that the defendant had been acquitted, because the demurrer to the plea of former jeopardy was based upon the ground that the facts stated presented no bar in law to the prosecution of the defendant under the indictment upon which he was about to be arraigned.

We think the court erred in sustaining the demurrer and striking the defendant's plea in bar. It is apparent, from the statement of the charge in the two indictments, that they related to identically the same transaction—the purchase by the defendant on the

21st day of December, 1909, of two bales of cotton, worth $111.76, from N. O. Gunnin, a planter, and the failure of the defendant to pay for the cotton, by reason of which Gunnin suffered a loss. The former indictment was based on section 551. The purpose of both sections, 551 and 553, is to protect producers and dealers in farm products from loss resulting from the misconduct or fraud of the purchasers. The gravamen of the offense defined in each section is loss to the seller. If the loss results by reason of the fact that the sale was for cash, and that the purchaser made way with or disposed of the product before he paid for it, then the case would fall under section 551. If the loss resulted from the fact that the buyer's check was worthless, and was refused when presented for payment, then the case would fall under section 553. It may be noticed, also, that some articles are included in the one statute which are not mentioned in the other; but the one common, essential element, which is controlling, in order to constitute a crime in either case, is loss resulting to the seller of the products designated, by reason of wrongful failure on the part of the purchaser to pay for the product.

Of course, in both statutes it was necessary for the legislature to insert as elements certain facts (necessary to be proved) which would distinguish the crimes from an ordinary refusal to pay a debt; for otherwise the law would be unconstitutional and contrary to the fundamental law, which forbids imprisonment for debt. And so in section 551 there is superadded to the refusal to pay (which of itself could not be a crime) the element that it must appear that the purchaser made way with or disposed of the property before he paid for it. From this making way with or disposing of the property, and refusal to pay, the law conclusively presumes that loss has accrued to the seller; and the State is not required directly to prove loss, because loss is implied. Under section 553 the seller must sustain loss, in order to sustain a prosecution. In other words, sufficient evidence must be adduced to show that loss resulted from refusal to pay the check or draft; for the reason that it would not in every case follow that loss resulted merely because the payment of a check or draft was refused. A suit could be brought upon the paper, and if the drawer was perfectly solvent, though there might be delay, there might not be any loss; so that to our minds it is very evident that the purposes

of the two acts are identical, and the offenses created by law are similar in every essential respect, and that where it appears, as in the present case, that the transaction upon which prosecution in any case is predicated is the same as the one which has already been legally investigated, the defendant has been in jeopardy, and can not be tried again for the same act. Each offense is the same transaction; i. e., the failure to pay the obligation under circumstances which the law condemns and which introduce a criminal element into the failure to pay, and take it out of the class of ordinary debts, for failure to pay which there could be no imprisonment.

The case is not different from one class of larceny after trust delegated. In the offense of larceny after trust, as defined in the Penal Code (1910), §§ 189, 190, there must be a demand and refusal to pay, before the offense is complete. In the many other instances included in sections 191 et seq., proof of demand and refusal to pay is wholly unnecessary. The essential element of the offense in each case is the wrongful and fraudulent conversion of the property of another, with which the defendant has been intrusted. In the one class of cases the conversion is implied, and in the other the conversion must be proved by evidence of demand and of a refusal to pay or turn over the property. The manifest purpose of section 553, as well as of section 551, was to protect the producers and sellers of farm products from loss in disposing of the products of the farm. The law was designed primarily to protect farmers, who produced either farm, orchard, or dairy products; and other sellers are also included, no doubt, because otherwise the statute would be class legislation. So far as appears from the indictments in the present record, the accused could not be guilty more than once of entailing loss upon N. O. Gunnin of $111.76, growing out of the purchase of the same two bales of cotton of that value, unless the defendant in fact purchased two lots of cotton, of two bales each, from Mr. Gunnin, as separate and distinct purchases, and the point that there were two transactions was not raised, and could not be raised, by demurrer.

The plea of former jeopardy alleged that there was only one transaction between the parties; and, this being admitted by the demurrer, the demurrer should have been overruled.

*Judgment reversed.*