LAKE ERIE AND WESTERN RAILROAD COMPANY *v.*
DOUGLAS.

[No. 10,123.   Filed December 12, 1919.]

1. RAILROADS.—*Crossing Accident.—Smoke and Noise.—Pleading.*—
In an action for damages for injury by collision, a paragraph of complaint examined and *held* to state a cause of action on the theory that owing to smoke and noise produced by a passing train, the statutory signals, if given, of the approach of the colliding train, were imperceptible, and for failure to give other warning of the approach of the train and approaching at an excessive rate of speed under such circumstances.  p. 574.

2. RAILROADS.—*Crossing  Accident.—Last  Clear  Chance.*—Paragraph of complaint *held* good on the theory of last clear chance owing to the allegations of the surroundings of the parties, their being unconsciously in danger and of the knowledge of that fact by the engineer running the colliding passenger train.  p. 575.

3. TRIAL.—*Verdict.—Effect.*—A general verdict for plaintiff finds in her favor every material allegation in the complaint.  p. 576.

4. TRIAL.—*Interrogatories to Jury.—Answers.—Motion for Judgment on Answers.*—A motion for judgment on answers to interrogatories returned with a verdict is properly overruled when the answers and the verdict are not in irreconcilable conflict.  p. 576.

5. TRIAL.—*Instructions.—Explanatory Instructions.—Construction.*
—An instruction intended as explanatory of another requires that the two should be read and considered together as virtually one instruction.  p. 579.

6. TRIAL.—*Instructions.—Burden of Proof.—Crossing Accident.*—
In an action against a railroad for injuries at a crossing, an instruction that in effect told the jury that the railroad had the burden of showing freedom from negligence and that a showing that it had given the statutory signals under the circumstances

did not relieve it of such burden, invaded the province of the jury and was erroneous. p. 579.

7. NEGLIGENCE.—*Common Law.*—*Jury Question.*—Common-law negligence is always a failure to use due care, of which the jury are the judges, and therefore always a question of fact for the jury. p. 579.

8. RAILROADS.—*Crossing Accidents.*—*Obstructions to View.*—*Instructions.*—In an action for injuries at a railroad crossing, evidence of things obscuring the view of approaching trains was proper to be considered by the jury in determining whether the plaintiff had exercised reasonable care for her own safety, and an instruction advising the jury that such evidence was to aid them in determining the degree of care and caution necessary on the part of the defendant should have been so limited. p. 580.

9. RAILROADS.—*Crossing Accident.*—*Contributory Negligence.*—*Evidence.*—*Instructions.*—An instruction on the subject of contributory negligence in a railroad crossing accident case that directs the jury to consider all facts and circumstances in evidence, should have been limited to the facts and circumstances existing or occurring prior to the time of the collision. p. 580.

10. TRIAL.—*Instructions.*—*Repetition.*—*Inapplicable.*—Instructions tendered but which are erroneous or inapplicable to the evidence, or covered by other instructions so far as correct, are properly refused. p. 581.

From Tippecanoe Superior Court; *James P. Wason,* Special Judge.

Action by Grace Douglas against the Lake Erie and Western Railroad Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*John B. Cockrum* and *Stuart, Hammond & Stuart,* for appellant.

*Charles V. McAdams, Clyde H. Jones* and *Leonard J. Curtis,* for appellee.

ENLOE, J.—This was an action brought by appellee against appellant to recover damages for personal injuries alleged to have been sustained while riding in an automobile, and traveling eastward upon the highway known as the Montmorenci road at the point

where said road crosses the tracks of appellant, by being there struck, while crossing said track, by one of appellant's trains.

There were three paragraphs of the complaint, but, the first having been dismissed, the case was tried upon the second and third paragraphs, to each of which the appellant had separately demurred for want of facts, with memoranda of deficiencies required by the statute, which demurrers were by the court overruled, and to which action appellant had excepted. To each of said second and third paragraphs the appellant had answered in general denial. The cause was submitted to a jury for trial, which returned its verdict in favor of appellee, together with answers to certain interrogatories submitted to it by the court.

Appellant duly filed its motion for judgment in its favor upon these answers to interrogatories so made and returned by the jury, and also filed its motion for a new trial, each of which was overruled and exception duly taken.

The errors assigned and relied upon require a consideration of the questions hereinafter determined.

The first question to be considered is as to the sufficiency of the second paragraph of the complaint. This paragraph of complaint is quite lengthy and no good purpose would be served by setting out the same in its entirety. In this paragraph of complaint the facts are alleged showing the physical surroundings of said crossing and its unusual dangers at the time appellee and those with whom she was riding attempted to cross the tracks of appellant at the point in question. The negligence charged in this paragraph relates to the manner in which the passenger train, by

which appellee was then and there struck, was then and there being run and operated by the servants of appellant. This paragraph of complaint, among other things, avers that, as appellee and those with whom she was riding approached said crossing, traveling toward the east, they discovered a freight train approaching said crossing from the east; that appellant's track at that point, and for some distance to the east and west thereof, was on an up-grade to the west; that said freight train was being moved by two engines, one in front and the other in the rear acting as a "pusher"; that said train consisted of sixty-two freight cars and was a long and heavy train; that the engines moving the same were laboring hard; that said freight train, as it reached and passed over said crossing, was moving at the rate of about ten miles per hour; that the day was cloudy; that the time of day was about 5 o'clock p. m.; that an easterly wind was blowing; that the said engines attached to said freight train were emitting great volumes of black smoke, which came over and settled down on the westerly side of said train; that the smoke from the engines concealed and shut off the view of appellant's track to the west and rendered it impossible to see a train approaching from that direction; that the great noise made by the engines attached to said freight train and the noise and rumbling made by said train in motion made it impossible for appellee to hear the ordinary signals given by a train approaching said crossing from the west. This paragraph of complaint then avers: "And that all of such facts were open and visible to all servants of the defendant so operating such passenger train as aforesaid, and were plainly visible to them, and the

plaintiff avers that the operation and proximity of such freight train on the opposing track as aforesaid, making the noises as aforesaid, and being near to such crossing and the plaintiff, prevented all signals by whistle or bell given by said passenger train from being heard at such crossing, and the same were not heard if given, and the plaintiff avers that the servants of the defendant well knew, or by the exercise of ordinary care and foresight should have known, that signals of whistle and bell given by such passenger train when not less than eighty nor more than one hundred rods from such crossing could not be heard at such crossing on account of the noises made by such freight train and engines pulling and pushing the same, and the plaintiff avers, that notwithstanding such facts and knowledge, the servants of the defendant ran such passenger train upon such crossing at such high and excessive speed as aforesaid, and she says that the defendant was careless and negligent in not adopting some other reasonable and prudent method of notifying her of the approach of such train, and was so careless and negligent in so operating the same at such excessive speed, knowing that the signals ordinarily given of its approach to such crossing could not be heard, and was careless and negligent, knowing such signals could not be heard for the reasons aforesaid, in not operating and running such train at a rate of speed which would have enabled its engineer to stop the same in case of emergency; and the plaintiff says that it was practicable to have so operated the same at a moderate rate of speed and have prevented the accident and injury to the plaintiff had the defendant and its

servants exercised ordinary care in the operation of such train.''

The complaint further avers that appellee's injuries as in said complaint set forth were caused solely on account of the acts of negligence by the appellant, its servants and agents as therein averred, and not otherwise.

The third paragraph of complaint, as to the description and surroundings of said crossing, is in its allegations similar to the second, but said paragraph further alleges that: ''When the locomotive of such passenger train was more than twenty-five hundred feet from such crossing, the servants in charge of such locomotive, including the engineer who was operating the same saw the automobile in which the plaintiff was riding, standing within a few feet of such crossing, and believed that said automobile would start forward across said track as soon as the freight trains had cleared the same.

''And the plaintiff avers that the said engineer and other servants in charge of said locomotive engine continued to observe said automobile in which the plaintiff was riding from the place where said servants first observed such automobile as aforesaid, and the said engineer and said servants saw said automobile start forward and move toward said track, and such servants in charge of said engine knew that such automobile in which the plaintiff was riding was entering a place of danger and peril from which the occupants of said automobile would be unable to extricate themselves. That said engineer and servants in charge of said locomotive engine knew that the occupants of said automobile did not know of the approach of said locomotive engine in charge of said

passenger train being run at such a high and dangerous rate of speed, and the plaintiff avers that notwithstanding the fact that the plaintiff was unconsciously entering into a place of danger and peril, and notwithstanding the servants in charge of said engine knew that the plaintiff was entering into a place of danger and peril from which she would be unable to extricate herself, the servants in charge of said locomotive engine carelessly and negligently after having such knowledge, continued to run and propel such engine at such high and dangerous rate of speed, without making any effort whatever to stop or check the same and without making any effort to give any other or additional warning to the plaintiff until within a few feet of said crossing, and the plaintiff avers that such locomotive engine so run and operated at such high and dangerous rate of speed continued to be run and operated at such speed to and against the automobile in which plaintiff was at the time riding. That such passenger locomotive and train struck such automobile in which plaintiff was riding with great force and violence, thereby and on account thereof plaintiff was injured in the following manner: (Here the injuries are stated.)

"The plaintiff further avers that the servants in charge of said locomotive engine could easily have stopped or checked said engine and could have avoided collision with such automobile after they knew and realized that the plaintiff was entering into a place of peril from which she would be unable to extricate herself, but they carelessly and negligently refused so to do."

We first consider the sufficiency of said second paragraph. In the case of *Chicago, etc., R. Co.* v. *Still*

(1858), 19 Ill. 499, 71 Am. Dec. 236, it was said:
1.   "Railroad companies, in operating their cars, must be held, in crossing public highways and thoroughfares, to so regulate the speed of their trains, and to give such signals to persons passing, that all may be apprised of the danger of crossing the railroad track. And they should also keep a lookout, so as to see, and, as far as possible, prevent injury to others exercising their legal rights. A failure in any of these duties, on their part, should render them liable for injuries inflicted, and for wrongs resulting from its omission."

In the case of *Chicago, etc., R. Co.* v. *Perkins* (1888), 125 Ill. 127, 17 N. E. 1, which was a crossing case, it was said: "If a railroad company, in the running of its trains, had no duty to perform except what the legislature might prescribe, the position of counsel might be well taken; but such is not the case. A railroad company, in the running of its trains, is required to use ordinary care and prudence to guard against injury to the person or property of those who may be traveling upon the public highways and are required to cross its tracks, whether required by the statute or not. The fact that the statute may provide one precaution does not relieve the company from adopting such others as public safety and common prudence may dictate."

In the case of *Continental Improvement Co.* v. *Stead* (1877), 95 U. S. 161, 24 L. Ed. 403, in which case the cause of action arose in Indiana, the court said: "We think it is in accordance with well-settled law and with good sense. If a railroad crosses a common road on the same level, those traveling on either have a legal right to pass over the point of

crossing, and to require due care on the part of those traveling on the other, to avoid a collision. Of course, these mutual rights have respect to other relative rights subsisting between the parties  *  *  *:  it is the duty of the wagon to wait for the train. The train has the preference and right of way. But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way. Such warning must be reasonable and timely.''

In the case of *Bellefontaine R. Co.* v. *Hunter* (1870), 33 Ind. 335, 366, 5 Am. Rep. 201, the court said: ''On the other hand, the company are required to keep a reasonable lookout at public crossings and to give such signals of their approach as are calculated to notify the public, when without such signals, and in the exercise of the proper care and caution by the public, their proximity would not otherwise be known. Thus, if the track were concealed from view, and the sound of the train from high wind or any other cause was destroyed, it would devolve upon the company to use any other usual and proper method to give notice to passengers upon the highway.''

The court did not err in overruling the demurrer to this paragraph of complaint.

The third paragraph of complaint is addressed to the theory of last clear chance. The allegations therein contained as to the surroundings of the parties, their being unconsciously in danger, and of the knowledge of that fact by appellant's engineer running said passenger train, clearly make this paragraph good upon that theory. *Terre*

*Haute, etc., Traction Co.* v. *Stevenson* (1920), 189 Ind. 100, 123 N. E. 785.

It is next urged that the court erred in overruling appellant's motion for judgment in its favor, upon the answers to interrogatories returned by the jury, notwithstanding the general verdict.

The general verdict is, in effect, a finding in appellee's favor as to every material allegation in her complaint. It is, in effect, a finding that the engineer on appellant's engine saw and knew that, by reason of the wind and smoke, the appellee and those with her could not hear his crossing signal nor see the approach of his train, and that he took no steps to reduce the speed of his train so that it might be brought under control, in case of emergency, and travelers upon the highway saved from an injury; that he took no precaution to give other and additional signals, that travelers on such highway might have due and timely warning of approaching danger; that he saw the appellee, and those with her, before they attempted to cross said track, and knew that they were about to start the automobile and attempt to cross; that by reason of the sound and smoke they were in a condition of peril; that his train was then running at a high rate of speed, and appellee and those with her would not have time to make the crossing safely before his train would be upon them to injure them; that said engineer could then have checked the speed of his train and so brought it under control that the injury would not have been occasioned, all of which he failed to do, thus causing the injury complained of. The answers of the jury relied upon as showing contributory negligence were

not in irreconcilable conflict with the general verdict, and there was no error in overruling said motion.

It is next urged that the court erred in overruling appellant's motion for a new trial.

In this motion it is assigned, among other reasons, that the court erred in giving certain instructions at the request of the appellee.

Among other instructions thus challenged are the ninth and tenth of said instructions, which read as follows: "9. The law of this state requires a railway company, such as the defendant, when operating a train over its railroad in this state, as the defendant was operating its train which is alleged to have caused the injury sued for in this case, to sound the whistle attached to the locomotive moving such train three times when not less than eighty or more than one hundred rods from any highway crossing over which the train is to pass, and to ring the bell attached to such locomotive continuously from the time of sounding the whistle until the locomotive has cleared the highway crossing. The neglect of the railway company to observe this law and so sound the whistle and ring the bell is negligence as defined by the court in these instructions. The jury, however, is instructed that the plaintiff in this case by her complaint does not charge the defendant with failure to so sound the whistle and so ring the bell as required, but charges in substance and effect, that at the time and place of the accident the conditions were such that the giving of the signals by whistle and bell, if given, were such that they could not be heard at the crossing in question where and when the accident occurred and that such conditions were produced by the defendant causing a freight train controlled by it to be operated

over the opposing double track of its railroad at the point of crossing and at the same time when the train which was in collision with plaintiff was approaching the crossing on the other opposing track of the defendant, and that such freight train and the engines pulling the same up grade gave forth such loud and deafening noises as it passed over such railroad at the time and place where the other engine was required to give such signals and at the time and place where the plaintiff was on the highway, that such signals, if given, could not be heard and were not heard by plaintiff, and it is further charged that such conditions were such and so apparent that the agents and servants of the defendant operating the train which caused the accident, knew or by the exercise of ordinary care should have known that the signals required by whistle and bell if given, could not be heard by persons approaching the crossing or such highway.    Therefore, you are instructed that if conditions were such at the time and place of the accident, as alleged in the complaint, that the signals required by whistle and bell, if given, could not be heard and were not heard if given, and that such conditions were produced by the defendant by another train under its control, or if produced as alleged in the complaint, but not by the defendant but that the agents and servants of the defendant knew or by the exercise of ordinary care should have known that the signals if given could not be heard on account of such conditions existing at the crossing, then in either of such cases the situation is the same as if the signals had not in fact been given.''

''10.   In other words the last preceding instruction means that if the signals given were ineffective

and useless, and rendered so on account of the acts of the defendant or others under its control or if rendered so ineffective by the acts of others not under its control, but the servants and agents in charge of its train knew, or by the exercise of ordinary care should have known on account of such conditions that the signals would prove ineffective then the fact that they, the signals, were given, *does not relieve the defendant of the charge of negligence."*   (Our italics.)

The tenth instruction is aimed to be explanatory of the ninth, and the two should therefore be read and considered together, as being virtually one instruction. Persons are "relieved" of burdens, and for the appellant to be relieved could only mean that some burden rested upon it.   What burden?   Evidently the burden cast upon it by the charges of negligence contained in the complaint. These charges of negligence were stated by the court in its second instruction to be:   (1) Failure to give other than statutory signals and warning of the approach of this train to the highway crossing;  (2) negligent operation of said train at a high and dangerous rate of speed; and (3) neglect of appellant to perform duties which it owed to appellee, after discovering and knowing her peril, under the doctrine of last clear chance.   Did either of these specifications of negligence, charge negligence, as a matter of law, negligence *per se,* or was the question of negligence still one for the determination of the jury? Violation of a duty prescribed by statute or ordinance of a city is negligence *per se,* but common-law negligence is always a failure to use due care, of which the jury are the judges, and is therefore always a question of fact for the jury.   The effect of these in-

structions was to tell the jury that the appellant had the burden of showing freedom from negligence and that a showing that it had given the statutory signals at the time and place in question did not relieve it of such burden. Clearly, it invaded the province of the jury and was erroneous.

Complaint is also made of the fourteenth instruction, given at the request of appellee. This instruction told the jury that the allegations of the complaint concerning smoke obscuring the track, trees, weeds and foliage, obscuring the view of approaching trains, the conformation of the ground in the vicinity of crossing, were not allegations of negligence, upon which the cause of action was predicated, but were only to be considered along with the acts of negligence charged, for the purpose of aiding the jury in determining the degree of care and caution necessary to be exercised by the defendant, etc. The things mentioned in this instruction were proper to be considered by the jury, *if proved,* not for the purpose of enabling them to determine the *degree of care and caution to be exercised* by the defendant, but for the purpose of enabling them to determine whether the plaintiff, appellee, had as a matter of fact *exercised reasonable care* for her own safety, at the time in question, under all the circumstances and surroundings, and should have been so limited. The law fixed the degree of care, and it was for the jury to say whether that degree required by the law had been exercised.

The last clause in instruction No. 20, of those given at request of appellee, and which instruction is also objected to by appellant, is as follows:

8.

9. "* * * if you find such facts are shown by the evidence, along with all other facts and cir-

cumstances that may appear in the evidence in this case." The instruction of which the above is a part was on the subject of contributory negligence by appellee, and should have been limited to "facts and circumstances" existing as occurring prior to time of collision by which she was injured.

Other instructions given we do not think to be open to the objections urged against them.

As to the instructions tendered by appellant and refused, we have carefully considered each and all of them, and they are either erroneous or not applicable, and therefore would have been misleading; or they were covered, so far as correct, by other instructions given.

As this cause must be reversed because of the giving of the foregoing instructions, other assigned errors need not be considered.

The judgment is therefore reversed, with directions to the trial court to sustain appellant's motion for a new trial, and for further proceedings.